UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

EL FARO ASSEMBLY OF GOD, INC.,

   Plaintiff,

v.                                                      CASE NO: 5:15-CV-86-JSM-PRL

AMERICAN STATES INSURANCE
COMPANY,

   Defendant.
_____/

# ORDER

THIS CAUSE comes before the Court upon Defendant American States Insurance Company's Motion for Summary Judgment against Plaintiff El Faro Assembly of God, Inc. (Dkt. 39), Plaintiff's Response in Opposition (Dkt. 44), Plaintiff's Dispositive Motion for Partial Summary Judgment as to Count I and Count III of the Complaint (Dkt. 40), and Defendant's Response in Opposition (Dkt. 43). The Court, upon review of the motions, responses, record evidence, and being otherwise advised in the premises, concludes there are material issues of fact remaining and, therefore, both motions should be denied.

## INTRODUCTION

This case involves two sinkhole claims on buildings ("Premises 1 and Premises 3") owned by Plaintiff El Faro Assembly of God, Inc. and insured by Defendant American States Insurance Company under the same commercial property insurance policy (the "Policy).

Prior to this lawsuit, a covered sinkhole loss was confirmed at Premises 1, but no sinkhole testing had been performed at Premises 3. The parties ultimately disagreed on the subsurface remediation plan for the sinkhole loss at Premises 1 and this action ensued. Specifically, El Faro filed three breach of contract claims against American States related to: coverage for the cost to stabilize the land and building and repair the foundation of Premises 1 in light of the confirmed sinkhole loss (Count I); above ground damages for Premises 1 (Count II); and the enforcement of El Faro's right under the Policy to sinkhole testing of Premises 3 (Count III).

Both parties move for summary judgment. American States argues that it is entitled to summary judgment in its favor on all of El Faro's claims and El Faro argues that it is entitled to summary judgment in its favor on Counts I and III of its Complaint. Tellingly, both parties, in their respective responses, essentially admit that there are genuine issues of fact that preclude judgment as a matter of law. For example, there is a genuine issue for trial related to the condition precedent of whether El Faro's notice of the insurance claims was "prompt"—until this issue is resolved, the Court cannot resolve any other coverage issues. For this same reason, the majority of the parties' arguments, like El Faro's arguments that it is entitled to a confession of judgment and attorney's fees, are premature and place the cart before the horse. Accordingly, the Court's discussion of the issues will be succinct, since it is clear that a ruling as a matter of law is inappropriate at this time. The Court now turns to the relevant facts.

## RELEVANT FACTS

Under the Policy, American States insured El Faro's buildings located on contiguous parcels in Ocala, Florida. The first building is a large sanctuary/congregation hall with office space, referred to as "Premises 1" under the Policy. The second building is an educational center that includes several out-buildings, collectively referred to as "Premises 3" under the Policy.[1] The Policy period that applies is October 26, 2009, to October 26, 2010. The Policy expired on October 26, 2010, and it was not renewed.

On March 30, 2011, El Faro reported a claim for the Premises 1 church and alleged a June 12, 2010, date of loss. At that time, El Faro did not report a claim for the Premises 3 church and storage buildings.

Subsequently, American States investigated the Premises 1 claim and retained SDII Global, Inc. to conduct subsidence testing. SDII issued a report in July 2011, confirming a sinkhole loss at Premises 1, and recommending a program of compaction and chemical grouting to remediate the sinkhole conditions. SDII's total estimated cost for the stabilization program was $231,110. American States accepted coverage for the loss and extended coverage for SDII's recommended subsurface repair protocol.

American States paid El Faro $98,405.03 for above ground damages to Premises 1. American States also procured two subsurface stabilization proposals prepared by Earth Tech and L.R.E. Ground Services. Earth Tech's remediation proposal estimated subsurface repairs

---

[1] Premises 2 is not at issue in this lawsuit.

at $219,405 and L.R.E.'s proposal estimated subsurface repairs at $222,185. American States sent El Faro both proposals and asked it to enter into a contract and start repairs.

El Faro did not enter into one of the proposed subsurface repair contracts. Rather, El Faro had Professional Engineer, Byron Anderson, from Structural Engineering & Inspections, Inc. ("SEI"), review SDII's report. Anderson's report, dated October 31, 2014, verified a sinkhole loss at Premises 1, and recommended a more comprehensive subsurface repair protocol than SDII's to stabilize the land and building and repair the foundation of Premises 1 at an estimated cost of $613,890.

On December 10, 2014, El Faro, through its counsel, requested that American States consider Anderson's report and revise its repair methodology with respect to Premises 1 to reflect that it would "fund the repairs per Mr. Anderson's protocol." (Dkt. 39-5). The December 10, 2014 letter also noted that El Faro disagreed with American States' estimate of the cost to repair the above ground damages at Premises 1. Although American States had tendered payment in the amount of $98,405.03 for the above ground damages, Anderson's above ground damages estimate was $215,471.88.

In the same December 10, 2014 letter, El Faro reported, for the first time, damage to Premises 3, with the same date of loss as the Premises 1 claim, i.e., June 12, 2010.

Ultimately, the parties could not agree on an appropriate subsurface repair protocol for Premises 1, an amount of above ground damages for Premises 1, and whether testing at

Premises 3 was necessary, and this lawsuit ensued.[2] Approximately nine months after this action was filed, the litigation was stayed so that the parties could participate in neutral evaluation of their claims pursuant to section 627.7074, Florida Statutes. Professional Engineer Gil Ramos conducted the neutral evaluation and issued a report dated April 25, 2016, confirming a sinkhole loss at Premises 1, and recommending a subsurface repair protocol similar to Anderson's protocol. Specifically, the Neutral Evaluator estimated, with respect to the Premises 1 sinkhole claim, that the "cost for the soil and foundation stabilization [was] $663,913.40 inclusive of low mobility compaction grouting, chemical grouting, underpinning, engineering services and monitoring services." (Dkt. 40-13). Regarding Premises 3, the Neutral Evaluator concluded that there was no sinkhole loss.

On August 10, 2016, American States' counsel wrote a letter to El Faro's counsel regarding the Neutral Evaluator's report. In relevant part, American States agreed to accept the Neutral Evaluator's report, noting that the report "resolved the method of repair dispute between the parties, recommending additional sinkhole remediation measures than those recommended by SDII." (Dkt. 40-14). The letter also noted that American States "accepts these recommendations and will pay for remediation in accordance with the April 25, 2016, report as soon as a repair contract is signed. Once El Faro signs a contract and begins

---

[2] Notably, the lawsuit was filed approximately three weeks after American States received notice of the Premises 3 claim. Soon after the lawsuit was filed, American States' expert inspected Premises 3 and concluded no sinkhole loss. El Faro continues to argue, however, that American States breached the Policy by failing to conduct testing for sinkhole loss at Premises 3 prior to El Faro filing this action.

subsurface work, my client will issue a check to the remediation company performing the work and the lienholders." *Id.* The letter instructed El Faro to notify American States by Friday, August 19, 2016, whether it accepted the findings and recommendation of both Neutral Evaluation reports, and whether El Faro intended to move forward with remediation plans in accordance with the report's subsurface repair recommendation for Premises 1.

The record is undisputed that El Faro, to date, has not signed a contract to begin the subsurface work on Premises 1. As such, it is also undisputed that American States has not paid for the remediation as recommended in the Neutral Evaluator's report. Nonetheless, the parties argue they are entitled to judgment in their favor based on these facts: El Faro argues that American States confessed to a judgment by changing its "coverage position" to the extent that American States agreed to accept the Neutral Evaluation report and American States argues that El Faro breached the Policy through its failure to enter into a contract for the subsurface work. American States also argues that El Faro's notice of the Premises 1 and Premises 3 claims was not prompt.

As explained further below, the Court cannot grant summary judgment under these facts to either party.[3] The Court now turns to the relevant law.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

---

[3] The parties assert a few other miscellaneous arguments that the Court will briefly address below.

show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248;

*Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

### I.  Genuine Issues Preclude Summary Judgment on Count I

As discussed above, both parties believe they are entitled to summary judgment on Count I of El Faro's Complaint. The Court, however, cannot grant either motion because there are disputed material facts related to notice. Morever, as long as American States contests notice, the parties' remaining arguments are premature.

### A.  Was the Notice of the Premises 1 Claim "Prompt?"

American States argues that El Faro's notice of the Premises 1 claim was not prompt. The Policy's "Duties In The Event Of Loss Or Damage" provision requires El Faro to provide American States "prompt" notice of the loss. The record is undisputed that El Faro reported the Premises 1 claim on March 30, 2011, nine months after the alleged loss date of June 12, 2010, and five months after the Policy expired.

Under Florida law, failure to give prompt notice in violation of an insurance policy will justify a denial of recovery. *See Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785-86 (Fla. 3d DCA 1981); *see also Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1333, 1338 (S.D. Fla. 2009); *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.,* No. 6:07-cv-326-Orl-DAB, 2009 WL 1513400, at *6 (M.D. Fla. May 27, 2009). "If the insured breaches [a] notice provision, prejudice to the insurer will be presumed, but may be

rebutted by a showing that the insurer has not been prejudiced by the lack of notice." *Bankers Ins. Co. v. Macias,* 475 So. 2d 1216, 1217-18 (Fla. 1985).

Generally, the determination of what constitutes "prompt notice" is a factual question which turns on the facts and circumstances of each case. *American Fire & Cas. Co. v. Collura*, 163 So. 2d 784, 792 (Fla. 2d DCA 1964); *Vision I,* 674 F. Supp. 2d at 1338. Furthermore, failure to provide prompt notice will bar recovery only when the failure is prejudicial to the insurer. The failure to provide prompt notice, however, creates a rebuttable presumption of prejudice. *See Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985).

The Court concludes that whether El Faro's notice was "prompt notice" as required under the Policy is a question of fact for the jury that precludes summary judgment. Similarly, whether El Faro can rebut any presumed prejudice is also disputed at this time. American States argues, in a conclusory fashion, that El Faro's "late reporting" delayed, impeded, and prejudiced American States' ability to investigate the losses, inspect the premises, and evaluate the damages and condition of the property. There are no record citations supporting these broad statements. And El Faro points to evidence that could lead a jury to find that its notice of the Premises 1 claim was prompt. El Faro noticed damage in June of 2010, and, sometime thereafter, El Faro consulted with a public adjuster, which resulted in the March 30, 2011 notice to American States. Notably, this is not a case where the damage was the result of a known event like a fire or a hurricane.

With respect to prejudice, El Faro responds that American States' corporate representative testified that, after American States received notice of the claim, SDII, American States' engineer, was able to determine that a loss had occurred on Premises 1. Further, the Neutral Evaluator testified that the conditions he encountered during his site visit of Premises 1 in February 2016, were consistent with the conditions encountered by SDII in April 2011. Accordingly, a jury could reasonably find that an investigation conducted immediately after the stated date of loss would not have changed American States' decision to extend coverage for the loss to Premises 1. American States' motion on this issue is denied.

### B.   American States' Argument about Withholding Payment

Curiously, American States moves the Court to essentially declare that American States may withhold payment for the cost of subsurface repairs until El Faro executes a contract, performs repair work, and incurs expenses. This request is denied. The Court will not render an advisory opinion on an issue that is not ripe. Nothing in the Policy or Florida law requires El Faro to enter into a contract for subsurface repairs as a prerequisite to filing suit or obtaining judgment in its favor on the scope and cost of subsurface repairs. *See e.g. Roker v. Tower Hill Preferred Ins. Co.*, 164 So. 3d 690, 693-94 (Fla. 2d DCA 2015) (rejecting Tower Hill's argument that Florida law and the subject policy required the insured to enter into a contract based on the repair protocol of Tower Hill's engineer as a condition precedent to payment or suit, and noting that nothing in the policy permitted the "insurance company's engineer [to] unilaterally dictate[] the method of subsurface repairs"). Count I

challenges American States' coverage position on the below-ground repairs. It is axiomatic that El Faro does not have to enter into a contract for the subsurface repairs to Premises 1 until the parties (or the finder of fact) agree on an appropriate remediation plan.

Additionally, as El Faro points out in its response, El Faro cannot execute a contract as long as American States argues that El Faro failed to provide timely notice of the Premises 1 claim. El Faro states that if it prevails on that defense, El Faro will "gladly execute" a repair contract, but, until that time, El Faro cannot legally obligate itself to a $663,913 repair. The Court agrees and denies American States' motion with respect to this issue.

### C.     El Faro's Argument that American States Confessed Judgment

It appears that El Faro concedes that its argument that American States confessed judgment on Count I is premature in light of American States' prompt notice defense, which is a condition precedent to coverage. Nonetheless, the Court briefly notes that El Faro's reliance on *Johnson v. Omega Ins. Co.*, 200 So. 3d 1207, 1219 (Fla. 2016), is unpersuasive because, to date, American States has not made any payment with respect to Count I. American States did offer to pay for remediation in accordance with the April 25, 2016 report contingent on El Faro executing a repair contract. But no payment was ever made because El Faro failed to execute a contract. Thus, *Johnson* is inapplicable at this time because, as that opinion makes clear, it is the "payment" of the previously denied claim that is the functional equivalent of a confession of judgment. *See id.* at 1215; *see also Life Changing Ministries, Inc. v. Canupius US Ins., Inc.*, No: 5:15-CV-59-Oc-30PRL, 2016 WL 6947341, at *3 (M.D. Fla. Nov. 28, 2016) (Moody, J.) (applying *Johnson* and concluding that the

insurance company confessed judgment when it denied the insured's claim, the insured sued, and the insurance company *paid the insured's claim following receipt of the neutral evaluator's report during litigation*). For this same reason, any argument as to El Faro's entitlement to attorney's fees is also premature. El Faro's motion on these issues is denied.

## II.     Genuine Issues Preclude Summary Judgment on Count II

American States contends that El Faro's above ground damage claim with respect to damages to the front walkway, driveway, parking lot, and concrete pads at Premises 1 in the amount of $6,005.21 is not covered as a matter of law. This argument lacks merit because it is not dispositive of the issue of whether American States breached the Policy by underpaying El Faro's above-ground damages. The Policy requires American States to provide coverage for the full cost to repair the direct physical above-ground damages to Premises 1. As explained above, it is undisputed that American States tendered payment in the amount of $98,405.03 for above ground damages. But El Faro estimates the cost at $214,341.96. Accordingly, there is a genuine issue of material fact as to the total amount of El Faro's above ground damages and summary judgment is not appropriate on this claim.

Also, with respect to damages to the front walkway, driveway, parking lot, and concrete pads at Premises 1, it appears that El Faro is seeking damages to these areas only to the extent that these areas are impacted by the subsurface repair protocol. American States' motion on this issue is denied.

### III. Genuine Issues Preclude Summary Judgment on Count III

American States argues that El Faro's notice of the Premises 3 claim was not prompt. The record is undisputed that El Faro reported the Premises 3 claim on December 10, 2014, four years and seven months after the alleged loss date of June 12, 2010, and four years and one month after the Policy expired. Like the Premises 1 notice, American States similarly argues in a conclusory fashion that this late notice prejudiced it. The Court cannot determine this issue as a matter of law because El Faro has pointed to evidence rebutting any presumed prejudice. Moreover, the parties essentially concede that judgment on Count III is inappropriate at this time. Accordingly, both parties' motions are denied with respect to Count III.

### IV. American States' Argument about Replacement Cost Benefits Is Premature

The Court briefly notes that American States' argument regarding El Faro's entitlement to replacement cost benefits is premature at this time. While El Faro does not dispute that replacement cost benefits do not arise until the repair or replacement has been completed, this does not foreclose El Faro from seeking replacement cost benefits at some point in the future when they are incurred. And American States' argument on this issue is not relevant to the alleged claims in this case, i.e., whether American States breached the Policy by failing to provide coverage for the full subsurface repairs required by the Policy and by failing to provide coverage for the full cost to repair the direct physical above ground damages to Premises 1. Plaintiff's Complaint does not allege a breach of the Policy based on Defendant's failure to provide replacement cost benefits because such a claim is not ripe.

Again, the Court will not render advisory opinions on premature issues. American States' motion on this point is denied.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant American States Insurance Company's Motion for Summary Judgment against Plaintiff El Faro Assembly of God, Inc. (Dkt. 39) is DENIED.

2. Plaintiff's Dispositive Motion for Partial Summary Judgment as to Count I and Count III of the Complaint (Dkt. 40) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on February 23, 2017.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record